```
       IN THE UNITED STATES DISTRICT COURT
         FOR THE DISTRICT OF MARYLAND
```

|                              |   |                                      |
|------------------------------|---|--------------------------------------|
| GREGORY ANTOINE WILLIAMS     | : |                                      |
|                              | : |                                      |
|         v.                   | : | Civil Action No. DKC 17-1890         |
|                              |   | Criminal No. DKC 13-0650-002         |
|                              | : |                                      |
| UNITED STATES OF AMERICA     |   |                                      |
|                              | : |                                      |

**MEMORANDUM OPINION**

Presently pending and ready for resolution are a motion to vacate sentence filed by Petitioner Gregory Williams ("Petitioner") (ECF No. 320), and a motion to supplement (ECF No. 349). For the following reasons, the motion to supplement will be granted and the motion to vacate sentence will be denied.

**I.  Background**

On June 27, 2014, Petitioner was convicted by jury of conspiracy to interfere with commerce by robbery ("Count 1"), conspiracy to possess with the intent to distribute more than 500 grams but less than 5 kilograms of cocaine ("Count 2"), conspiracy to possess a firearm in furtherance of a drug trafficking crime and crime of violence ("Count 3"), and possession of a firearm in furtherance of a drug trafficking crime and crime of violence ("Count 4"). On October 1, 2014, Petitioner was sentenced to 150 months imprisonment, consisting of 90 months concurrent on Counts 1, 2, and 3, and a consecutive term of 60 months on Count 4. Petitioner appealed to the United

States Court of Appeals for the Fourth Circuit, and his conviction was affirmed on April 19, 2016. *United States v. Hare,* 820 F.3d 93 (4th Cir. 2016).[1]

On June 23, 2016, the court received a letter dated June 18, 2016, from Mr. Williams stating that he intended to file a motion raising a "Johnson" claim regarding the § 924(c) conviction. (ECF No. 295). The court construed the letter as a motion to vacate pursuant to § 2255, and gave Petitioner 28 days to supplement the motion on appropriate forms. (ECF No. 297). No supplement was filed and, on September 13, 2016, that initial "motion" was denied without prejudice. (ECF No. 298). Then, on July 7, 2017, Petitioner filed the pending motion to vacate sentence pursuant to 28 U.S.C. § 2255. (ECF No. 320). The government was directed to respond to the motion and did so on November 16, 2017. (ECF No. 331). Petitioner replied. (ECF No. 338). On December 23, 2019, the court received Petitioner's motion to supplement. (ECF No. 349).

**II. Standard of Review**

To be eligible for relief under § 2255, a petitioner must show, by a preponderance of the evidence, that his "sentence was imposed in violation of the Constitution or laws of the United

---

[1] Mr. Hare was a co-defendant whose appeal was decided along with Petitioner's. As will be discussed in more detail below, counsel raised an issue based on *Johnson v. United States*, 135 S.Ct. 2551 (2015), arguing that the § 924(c) conviction could not stand because the Hobbs Act robbery conspiracy was not a crime of violence. The Fourth Circuit rejected that challenge because the § 924(c) conviction also rested on a drug trafficking crime.

2

States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a). A *pro se* movant, such as Petitioner, is entitled to have his arguments reviewed with appropriate consideration. *See Gordon v. Leeke*, 574 F.2d 1147, 1151–53 (4th Cir. 1978). But if the § 2255 motion, along with the files and records of the case, conclusively show that he is not entitled to relief, a hearing on the motion is unnecessary and the claims raised in the motion may be dismissed summarily. § 2255(b).

**III. Analysis**

Petitioner challenges his convictions and sentence on the ground that his trial counsel and appellate counsel were ineffective. At trial, Petitioner was represented by James W. Rudasill, Jr., a retained counsel who entered his appearance approximately a month prior to trial. (ECF No. 120). Previously, Petitioner had been represented by two attorneys appointed pursuant to the Criminal Justice Act ("CJA"). On appeal, Petitioner was represented by Michael Lawlor.

To establish ineffective assistance of counsel, the petitioner must show both that his attorney's performance fell below an objective standard of reasonableness and that he suffered actual prejudice. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within a wide range of reasonably professional

conduct, and courts must be highly deferential in scrutinizing counsel's performance. *Id.* at 688–89; *Bunch v. Thompson*, 949 F.2d 1354, 1363 (4th Cir. 1991). Courts must judge the reasonableness of attorney conduct "as of the time their actions occurred, not the conduct's consequences after the fact." *Frye v. Lee*, 235 F.3d 897, 906 (4th Cir. 2000). Furthermore, a determination need not be made concerning the attorney's performance if it is clear that no prejudice could have resulted from some performance deficiency. *Strickland*, 466 U.S. at 697. To demonstrate actual prejudice, Petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

**A. Trial counsel was not ineffective for failing to object to a special jury verdict form.**

Petitioner first argues that his trial counsel was ineffective for failing to object to a special jury verdict form that permitted the jury to convict him of conspiring to distribute less than the amount of cocaine charged in Count 2 of the indictment. (ECF No. 320-1, at 5).

> A defendant charged with conspiracy to import or distribute an amount of a controlled substance "can, if the evidence warrants, be convicted of one of the lesser included offenses" based on a smaller amount of the substance. *United States v. Brooks*, 524 F.3d 549, 555 n.9 (4th Cir. 2008). Such a verdict is permissible as "an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c)(1). Because the lesser included offense is included in

4

> the charged offense, there is no variance.
> *See United States v. Martinez*, 430 F.3d 317,
> 340 (6th Cir. 2005) ("[T]his results in
> neither a prejudicial variance from, nor a
> constructive amendment to the indictment
> because [the defendant] was merely convicted
> of a lesser-included offense and all the
> elements of the former necessarily include
> those of the latter.").

*United States v. Cabrera-Beltran*, 660 F.3d 742, 753 (4th Cir. 2011) (alteration in original). Petitioner was indicted of conspiracy to possess with the intent to distribute 5 kilograms or more of cocaine. However, the jury found him guilty of the offense in the amount of 500 grams but less than 5 kilograms of cocaine, an amount less than that alleged in the indictment. The latter offense based on a smaller amount is necessarily included in the offense charged and did not result in a constructive amendment to the indictment. Thus, counsel had no viable reason to object to the special verdict form and was not ineffective for failing to raise a meritless argument.[2]

### B. Trial counsel's conflict of interest

Petitioner contends that a conflict of interest arose when trial counsel refused to call Marvin Bowden, a co-conspirator and organizer/recruiter of the conspiracy, as a witness because Mr. Bowden is trial counsel's nephew and counsel believed Mr.

---

[2] Petitioner argues that should he succeed on this argument and have his conviction vacated as to Count 2, he would argue that Count 1 would be insufficient to support his conviction as to Count 4 because a conspiracy to commit robbery "is not a violent crime for § 924(c) purposes." (ECF No. 320-1, at 10). Because Petitioner's argument fails with respect to Count 2, this additional argument will not be considered.

5

Bowden was cooperating with the government.[3] (ECF No. 320, at 7). In a separate criminal case, Mr. Bowden pleaded guilty to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine and conspiracy to possess a firearm in furtherance of a drug trafficking crime on February 5, 2014, months prior to Petitioner's trial. (*United States v. Bowden*, Criminal No. DKC 14-0031, ECF No. 39).

An "essential aspect" of the right to effective assistance of counsel "is a lawyer unhindered by conflicts of interest." *United States v. Nicholson*, 475 F.3d 241, 248 (4th Cir. 2007) (quotation marks omitted). When a petitioner brings a claim based on a conflict of interest, such a claim is governed by the standard found in *Cuyler v. Sullivan*, 446 U.S. 335 (1980), rather than the *Strickland* standard. *Nicholson*, 475 F.3d at 249. Under that standard, Petitioner must show (1) that his trial counsel operated under a conflict of interest and (2) that this conflict "adversely affected his lawyer's performance." *Cuyler*, 446 U.S. at 348. If Petitioner makes this showing, prejudice is presumed and nothing more is required for relief. *Id.* at 349-50.

---

[3] In the government's response in opposition to a post-trial motion for a new trial filed by Petitioner's co-defendant Antonio Edwards, the government acknowledged "that Mr. Rudasill is the godfather, not an actual or blood relative, of coconspirator Bowden[,]" and that "no defendant ever objected to Mr. Rudasill's representation during the pretrial stage or at trial." (ECF No. 222, at 18).

6

"To satisfy the first prong of the *Cuyler* test - the existence of an actual conflict of interest – [Petitioner] must show that his interests diverged from his attorney's with respect to a material factual or legal issue or to a course of action." *Stephens v. Branker*, 570 F.3d 198, 209 (4th Cir. 2009) (citations, brackets, and quotation marks omitted). The second prong of the *Cuyler* test - whether the conflict adversely affected counsel's performance - requires Petitioner to satisfy, by a preponderance of the evidence, the three-part standard established in *Mickens v. Taylor*, 240 F.3d 348, 361 (4th Cir. 2001):

> First, the petitioner must identify a plausible alternative defense strategy or tactic that his defense counsel might have pursued. Second, the petitioner must show that the alternative strategy or tactic was objectively reasonable under the facts of the case known to the attorney at the time of the attorney's tactical decision. [To demonstrate objective reasonableness,] the petitioner must show that the alternative strategy or tactic was "clearly suggested by the circumstances." [*United States v. Tatum*, 943 F.2d 370, 376 (4th Cir. 1991)] Finally, the petitioner must establish that the defense counsel's failure to pursue that strategy or tactic was linked to the actual conflict.

In establishing the three aspects of this test, Petitioner need not show that the alternative strategy or tactic would have been successful, but only that it would have been objectively reasonable. *Nicholson*, 475 F.3d at 252. The adverse effect inquiry is "heavily fact dependent," and the Fourth Circuit

7

affords great deference to the findings of the district court. *United States v. Dehlinger*, 740 F.3d 315, 323 (4th Cir. 2014) (quoting *Mickens*, 240 F.3d at 360).

It is not at all clear that Petitioner has provided evidence of actual conflict. Mr. Bowden had already pleaded guilty and nothing in the statement of facts to which he admitted remotely suggests that Petitioner was not aware of the expected use of firearms. Even if he could testify that Petitioner did not know of the firearm in the glove box, he certainly could not testify that Petitioner was unaware of the conspiracy in progress or the plan to employ firearms. Thus, there is no evidence that any personal relationship with a co-conspirator created a conflict with regard to a material matter. Ultimately, however, it is not necessary to determine whether there was the type of actual conflict that would satisfy the first prong, because, even accepting that there was, Petitioner has not shown that any conflict adversely affected counsel's performance.

Petitioner contends that counsel should have called Mr. Bowden as a witness on Petitioner's behalf to testify to Petitioner's lack of knowledge of the presence of a firearm in the glove box of Mr. Bowden's vehicle. Petitioner alleges that he adamantly requested counsel call Mr. Bowden as a witness and counsel refused due in part to counsel's personal relationship with Mr. Bowden. Knowledge of that specific firearm, however,

was not necessary to Petitioner's convictions. The verdict on Count 4 was based on both the Beretta and the Kimber firearms.

Moreover, as pointed out by the Fourth Circuit, Petitioner personally confirmed during recorded conversations that weapons, specifically handguns, would be available and involved: On May 9, 2013, "[w]hen Agent Rogers asked if Appellants had weapons, Edwards replied '[e]verybody got their own gun,' and Williams confirmed, '[t]hat ain't no problem.'" (ECF No. 291-1, at 6). On May 14, 2013, "[w]hen Agent Rogers asked about their weapons, Williams confirmed that they would bring 'hand tools' and potentially an automatic pump shotgun." (*Id.*, at 6-7. In rejecting the contention that erroneous aiding and abetting instructions merited reversal, the court concluded: "[T]he evidence amply demonstrates that it was reasonably foreseeable to Williams and Edwards that a co-conspirator would possess a firearm. At each meeting, Williams and Edwards discussed the firearms the crew would bring and the possibility of shooting the stash house guards. At no point was it suggested that the crew would proceed without firearms, even in the context of Plan B." *(Id.*, at 27). Accordingly, Petitioner has not shown that any conflict adversely affected counsel's performance.

**C. Appellate counsel was not ineffective for failing to challenge the sufficiency of the evidence as to Counts 1 and 2.**

Petitioner next argues that the jury's guilty verdicts as to Counts 1 and 2 were inconsistent and appellate counsel was

9

ineffective for failing to challenge the sufficiency of the evidence as to those counts. Petitioner contends that his counsel should have argued that Petitioner could not be convicted as to Count 1 and Count 2 for a lesser amount because the government's case and evidence was specific that Petitioner conspired to rob the drug stash house of at least ten to fifteen kilograms of cocaine. (ECF No. 320-1, at 15). Thus, if the jury found him guilty as to Count 1 for conspiracy to commit robbery, the jury's verdict as to Count 2 for an amount less than ten kilograms is inconsistent with Count 1.[4] For the reasons discussed below, Petitioner's arguments fail.

The selection of which issues to present on appeal is, almost by its very nature, a strategic decision. *See Burket v. Angelone*, 208 F.3d 172, 189 (4th Cir. 2000) ("[A]ppellate counsel is given significant latitude to develop a strategy that may omit meritorious claims in order to avoid burying issues in a legal jungle."); *Haynes v. United States*, 451 F.Supp.2d 713, 722 (D.Md. 2006) ("Limiting the issues to the stronger or strongest ones while winnowing out the weaker is sound appellate

---

[4] Petitioner argues that "[t]he jury instructions in this case clearly should have been that if the jury found that" Petitioner went along with Plan B, rather than Plan A, "they must render a verdict of not guilty[]" because "Plan B does not constitute a robbery" to support a guilty verdict on Count 1. (ECF No. 320-1, at 16-17). "Plan A" was to rob a drug stash house of between 10 and 15 kilograms of cocaine. "Plan B" was to stage a fake robbery and Petitioner and his co-defendants would take 3 kilograms of cocaine. (*Hare*, 820 F.3d at 96; ECF No. 320-1, at 17).

strategy."); *Lawrence v. Branker*, 517 F.3d 700, 709 (4th Cir. 2008) ("Effective assistance of appellate counsel does not require the presentation of all issues on appeal that may have merit, and [the court] must accord counsel the presumption that he decided which issues were most likely to afford relief on appeal." (quotation marks, brackets, and citations omitted)). Consequently, while it is conceivably possible to bring an ineffective assistance claim premised on an appellate counsel's failure to raise an issue, "it will be difficult." *Bell v. Jarvis*, 236 F.3d 149, 164 (4th Cir. 2000) (quotation marks and brackets omitted). An ineffective assistance claim based on an ignored issue generally will only succeed "when ignored issues are clearly stronger than those presented." *Lawrence*, 517 F.3d at 709.

Petitioner has not met that standard here. Appellate counsel raised several issues on appeal, making at least one argument of such strength that the Fourth Circuit addressed the appeal in a published opinion. Petitioner does not show how making his proposed arguments challenging the jury instructions and verdicts as to Counts 1 and 2 would have been stronger than those presented on appeal. The fact that the jury made the determination that the quantity of cocaine foreseeable was not above five kilograms does not mean that the jury had to have accepted that Plan B was the only agreement reached and must have rejected Plan A. Furthermore, even assuming the verdicts

11

were inconsistent, "it has long been settled that inconsistent jury verdicts do not call into question the validity or legitimacy of the resulting guilty verdicts[,]" *United States v. Green*, 599 F.3d 360, 369 (4th Cir. 2010) (citing *United States v. Powell*, 469 U.S. 57, 64 (1984); *Dunn v. United States*, 284 U.S. 390, 393 (1932); *United States v. Blankenship*, 707 F.2d 807, 810 (4th Cir. 1983)), and a defendant cannot challenge his conviction based on inconsistent verdicts, *United States v. Louthian*, 756 F.3d 295, 305 (4th Cir. 2014). "Indeed, an inconsistent verdict can result from mistake, compromise, or lenity, and a jury could just as likely err in acquitting as in convicting." *Id.* Therefore, counsel did not render ineffective assistance in deciding to forego making fruitless arguments in favor of making other stronger arguments on appeal.

Petitioner also makes an argument regarding his entrapment defense and argues that the undercover law enforcement officer created and presented Plan B to Petitioner and that it was legally impossible for him to conspire with an undercover law enforcement officer as to Plan B. (ECF No. 320-1, at 17-18). Appellate counsel made this argument on appeal, in addition to arguing that there was no independent agreement between Petitioner and his co-defendants to support a conspiracy as to Counts 1, 2, and 3, Consolidated Opening Brief of Appellants, *United States v. Hare*, 2015 WL 1869623, at *50-58 (4th Cir.

12

2016), which the Fourth Circuit denied. Therefore, Petitioner's ineffective assistance claim as to appellate counsel fails.

### D. Counsel was not ineffective for failing to argue that Petitioner was illegally charged by indictment as to Count 4.

Petitioner argues that counsel "failed to make an argument prior to trial, after trial, and on appeal that [Petitioner] was illegally charged by indictment as to [Count 4]." (ECF No. 320-1, at 20). Petitioner contends that counsel should have argued that the government charged use of the same gun for two separate crimes alleged in a single count — *i.e.*, both in furtherance of drug trafficking and in furtherance of a crime of violence. (*Id.* at 21-25).

"[W]here a statute is worded in the disjunctive, federal pleading requires the Government to charge in the conjunctive. The district court, however, can instruct the jury in the disjunctive. To do otherwise would improperly add elements to the crime that are not contained in the statute itself." *United States v. Montgomery*, 262 F.3d 233, 242 (4th Cir. 2001) (internal citation omitted); *see also Griffin v. United States*, 502 U.S. 46, 51 (1991) ("[I]t [is] regular practice for prosecutors to charge conjunctively, in one count, the various means of committing a statutory offense, in order to avoid the pitfalls of duplicitous pleading."); *United States v. Perry*, 560 F.3d 246, 256 (4th Cir. 2009) ("[W]hen the Government charges in the conjunctive, and the statute is worded in the disjunctive, the

13

district court can instruct the jury in the disjunctive."); *United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) ("It is black letter law that duplicitous indictments can be cured through appropriate jury instructions.").

Here, although the Government charged Count 4 in the conjunctive in the indictment, the court instructed the jury in the disjunctive. (ECF No. 193, at 35-37). Additionally, although the jury found Petitioner guilty of possessing a firearm in furtherance of both a crime of violence and a drug trafficking crime, Petitioner was not convicted of more than one count under 18 U.S.C. § 924(c). Contrary to Petitioner's contention, he was not charged with and convicted of two separate § 924(c) crimes. Therefore, counsel was not ineffective for failing to argue that Petitioner was "illegally charged" as to Count 4 nor was Petitioner prejudiced as a result.

Additionally, Petitioner argues that "counsel after trial and on appeal should have argued that [C]ount 4 was not supported by the evidence of the jury's verdict" because Count 4 was "specifically tied to [C]ounts 1 and 2[.]" (ECF No. 320-1, at 25). Counsel for Mr. Hare made this argument in a post-trial motion for a judgment of acquittal and for a new trial (ECF No. 217, at 3-4), which Petitioner's counsel adopted (ECF No. 281, at 27), and the court denied, finding that there was sufficient evidence on Counts 1 and 2 to support Count 4 (*id.*, at 40).

14

On appeal, counsel argued that there was no evidence of possession of the weapons by Petitioner to support his conviction as to Count 4. Opening Brief, at *67. Petitioner does not show how making his proposed arguments would have been stronger than that presented. Therefore, Petitioner has failed to establish that counsel rendered ineffective assistance on appeal.

**IV. Motion to Supplement**

The Anti-Terrorism and Effective Death Penalty Act ("ADEPA") imposes a one-year statute of limitations on § 2255 motions brought by federal prisoners. To be timely, a federal prisoner must file any motion to vacate, set aside, or correct his sentence, including any amendments, within one year of the date on which the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). Here, Petitioner's convictions became final when the time for filing a petition for writ of certiorari expired. *Clay v. United States*, 537 U.S. 522, 527 (2003). Petitioner's motion to supplement his motion to vacate sentence was filed more than one year later. As a result, the allegations can only be considered if they relate back to Petitioner's original motion under Fed.R.Civ.P. 15(c)(1), or if another statutory provision renders the filing timely.

Petitioner relies on *United States v. Davis,* 139 S.Ct. 2319 (2019), to argue, again, that conspiracy to commit Hobbs Act robbery is not a crime of violence. (ECF No. 349-1, at 1-6).

15

The proposed supplement seeks to challenge the viability of the § 924(c) conviction because the conviction in Count 1 no longer qualifies as a crime of violence. There are several reasons why this claim provides no avenue of relief. First, the issue was raised on direct appeal. The Fourth Circuit explicitly upheld the conviction on Count 4 even assuming there was some deficiency in considering Count 1 as a crime of violence. Petitioner was convicted also of a drug trafficking crime in Count 2, and the verdict on Count 4 was based on that as well. Ordinarily, an issue raised and decided on direct appeal on its merits cannot be raised again in a § 2255 petition. *Runyon v. United States*, 228 F.Supp.3d 569, 588 (E.D.Va. 2017), *appeal docketed*, No. 17-5 (4th Cir. Aug. 21, 2017). Petitioner may contend, however, both that the issue was not decided on its merits and that exceptional circumstances are present due to a change in substantive law. Even if timely and not foreclosed by the direct appeal, the supplement still fails to provide an avenue for relief. It is now established that conspiracy to commit a Hobbs Act robbery is not a crime of violence for § 924(c) purposes. *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019). The drug trafficking crime in Count 2 remains valid, however, and it still supports the § 924(c) conviction. There is no ambiguity in the record in this case. The special verdict form states that the § 924(c) conviction rests on both predicates.

## V. Conclusion

For the foregoing reasons, the motion to supplement will be granted and the motion to vacate sentence filed by Petitioner Gregory Williams will be denied.

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. §§ 2254 or 2255, the court is also required to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. A certificate of appealability is a "jurisdictional prerequisite" to an appeal from the court's order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Where the court denies the petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Upon its review of the record, the court finds that Petitioner does not satisfy the above standard. Accordingly, it declines to issue a certificate of appealability. A separate order will follow. A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge